Welcome to the United States Court of Appeals for the Fourth Circuit. We are especially honored and pleased to be here at the West Virginia University College of Law. We thank Dean Brewer and her staff for allowing this event to happen here. We're grateful for your warm hospitality and appreciate the turnout this morning. We probably should have sold tickets, I guess, at a premium. And so we're ready to hear argument in three cases this morning. First up, 24-2262 Wolf Run Mining Company v. DOWCP, Mr. Mattingly. Whenever you're ready, sir. May it please the Court. I am William Mattingly. I'm here on behalf of Wolf Run. It's appropriate that the Court got relocated to Morgantown to hear this case because we're literally looking down at the NIOSH facility where the medical articles and the criteria document that form the basis of the defense of this case were actually written. So it's happenstance that we're in Morgantown where those documents were. First, let me tell you a couple ground rules that I appreciate that I'm going to follow in the argument. I'm not going to ask you to reweigh the evidence. I'm not going to argue that the preamble can't be used as a scientific primer. I'm not going to argue that the administrative law judge is the one who needs to resolve the battle of the experts. I am going to argue that the administrative law judge did not resolve the battle of the experts. The first expert that was not resolved was Dr. Jarboe. You're saying they didn't resolve the battle of the experts? That's correct. They did not. She did not. You say that rather than that she erred in resolving it. She did not address the pinnacle issue, which Dr. Jarboe explained in detail in his report. The presumption applies here, doesn't it? Absolutely. There is a presumption that he is totally disabled. I'm glad to hear you say that because you wouldn't know it from reading your briefs. I conceded that the presumption was invoked because he was totally disabled. That's not an issue in this case. That's a 15-year presumption. It is. Of working underground in the coal mines here of West Virginia, basically. Correct. And having a totally disabling pulmonary disease. For multiple coal companies. Correct. Multiple jobs. Multiple jobs. And in addition to that exposure... He did not everything in the coal mines. He did. Continuing cigarette smoking. He said 32 years, I think, or 34 years. And the ALJ or the IJ gave him 27 credit for working underground. Correct. He was the power boss. One of the other observations that should be made in this case, he didn't have clinical pneumoconiosis. He didn't have x-ray evidence. So the question is, what was causing his disabling obstructive lung disease? The question is, how did your client rebut the presumption? With both the opinions of Drs. Jarbo and Dr. Renovagna. Dr. Jarbo explained using the medical literature in the preamble why a parallel reduction in certain parameters of the pulmonary function testing allowed him to conclude this was an impairment related to smoking, not coal dust exposure. But that's not rebutting the presumption because the two things are additive. It does rebut the presumption because he is able to say that the two exposures were not additive in this case. And the additive language comes out of the preamble. And that's not a rule of law that the Department of Labor invoked in the preamble. The preamble is pretty specific. When they talk about the new definition of pneumoconiosis, they want to explain that COPD does not have to be shown to be potentially caused by exposure to coal mine dust. That was the purpose of all the articles that they cited. This case involves the pulmonary function study. Put nose clips on your nose. You blow out into a tube. They measure certain parameters. The amount of air you can get out in the first second. The total amount of air you can get out. The ratio of those two. Mr. Manley, sorry to interrupt you. But where did the ALJ fall short in not resolving the battle of the experts? Because as I understand it, the ALJ gave at least three reasons why she discredited your client's experts. The first being that this coal miner's impairment wasn't totally responsive to bronchodilators, which suggested that it wasn't just the smoking that was causing this disease, but his exposure to coal mine dust. So that's the first thing. Second, she said that the coal miner's pulmonary function showed that his FEV subscript one score declined more than the FVC score. And you probably know a lot more about that than I could ever hope to know. But she said that the preamble says that this can be caused by coal mine exposure. So that's the second thing. So let me just stop there and give you those two reasons. Why isn't that enough for this record? Let me address the second one first.  And that is the crux of this case, because the preamble does talk about the ratio of the FEV1 to FVC. It does so very specifically between 79, 940, and 943 in defining COPD. It's a parameter of COPD. That ratio tells you whether you have an obstructive disease, can't get air out, or a restricted disease, have problem getting air into your lungs. Dr. Jarboe explained the medical articles that the Department of Labor had in the preamble that discussed on those same pages explained that that ratio is preserved. Although there's obstruction from coal dust exposure, that ratio is preserved and goes down in a parallel manner for both of those parameters, the FEV1 and the FVC. Whereas in smoking, the FVC is preserved, but the FEV1 drops significantly. And why I'm here... The medical literature that Dr. Jarboe relied upon, wasn't that prior to the preamble, prior to 2000? It is both. He relied on some articles after, but he relied on the very articles that are discussed in the criteria document that the Department of Labor acknowledges in its discussion of legal pneumoconiosis that they're relying on. And he explained that that document, which I offered as employer's exhibit for in this case, specifically says coal dust does not affect the ratio, smoking does. And in this case, it matters because that ratio was dropped incredibly low, but that wasn't the only parameter. Also, the FVC was preserved when you did lung volumes. Lung volumes are done by a different method. You sit in a body plethysmograph, which looks like an old telephone booth, and you just breathe in and out. It tells you how much air you get in your lungs and how much is trapped. It was incredibly trapped. Hence, more consistent with smoking than coal dust because coal dust doesn't cause that. Judge Dahm never dealt with that issue. She said he relied on the ratio. The ratio in case law has been said not to be a valid way to distinguish. But the case law and the doctors that relied on cases previously didn't have that criteria document in the record. Were those all presumption cases or not? Many of them were. Many of them were presumption cases. I don't know that it matters who has the burden of proof in this case, because clearly my client does. What matters is the administrative law judge didn't address the scientific controversy. That controversy was used to say, we want to refer to the preamble in recent decisions of the court, American Energy and Extra Energy, to resolve the battle of the experts. That hadn't been done in this case because this record is unrebutted. No one says that. You're not saying that the ALJ could not have relied on the preamble, just that the ALJ didn't do it right in this case? Correct. The ALJ ignored what we presented. I mean, it looked like the ALJ did address the things that you just presented, including the reversibility rationale and your experts view that smoking was more harmful than coal dust. I'm looking specifically at JA 303 and 304 for that. 303 and 304 is the place to look. Let me grab... The problem is on 303, if you look at the paragraph, Judge Dahm says, this is about halfway down, the preamble to the revised regulation states that a reduction in the FEV1-FEC ratio is a marker for obstructive lung disease, including that caused by coal mine employment. That's true. She didn't take it to the next step. Dr. Jarboe explained when that marker is incredibly increased, it helps to determine causation. And he used the medical articles that that general statement came from and explained in his report in multiple paragraphs why the parallel reduction of those two parameters was not here due to coal dust exposure, because it was so disproportionate. And the lung volume supported that. Judge Diaz, you also ask about the reversibility. When we get to that, if the ALJ had simply rejected that out of hand in light of the presumption, that would have been wrong? That's wrong according to the APA. And I think it's wrong according to this circuit's review of the cases. Because you need to have the ALJ weigh the conflicting relevant evidence. And here the ALJ has never addressed Dr. Jarboe's explanation that that ratio was so elevated and supported by medical literature that that's due to smoking. That's not due to coal dust exposure. You ask about reversibility. The ALJ has stood the argument on its head. Dr. Jarboe and Dr. Renovagna did not argue that complete reversibility shows that this is not due to coal dust exposure. They argued some reversibility has to be considered. And then you question what's causing that reversibility. Dr. Renovagna thought it was asthma influenced by smoking. Dr. Jarboe thought it was smoking. There doesn't have to be complete reversibility to diagnose asthma. And Judge Thacker, you ask about where Judge Dahm was wrong. 304, Judge Dahm says Dr. Renovagna did not address the fact that the results did not return to normal after the administration of bronchodilators. In his report, as I put in the brief, he addressed in detail and even said some ALJs in adjudicating these cases want to see complete reversibility. That doesn't happen. You have remodeling of the airways. You have repeated inflammation from smoking. And that's what causes the residual lack of reversibility. But as I understand the law in this area, with respect to legal pneumoconiosis, one can have a condition like asthma, which standing alone might not suggest a disease impairment as a result of coal dust exposure, but could be aggravated by coal dust exposure. So the two aren't mutually exclusive. So it seems to me that that's what the ALJ was suggesting in this case. But the ALJ never got there with that type of language. And we can't fill in the blanks for the ALJ, which was my complaint with what the Benefits Review Board did in this case. They added case law and tried to explain why the ALJ's decision was supported by substantial evidence incorrect. The other two doctors in this case were not even talked about by the Benefits Review Board. And that's a problem. Dr. Green's opinion cannot be credited because in his report, he says there's legal pneumoconiosis based on a 34-year occupational exposure to coal dust. Silly reason he gives, Joint Appendix 168. In his deposition, he admits you can't diagnose legal pneumoconiosis knowing length of coal mine employment. That employment alone doesn't substantiate the diagnosis. You have to have something else. And in this case, when presented with a disabled miner who's a smoker, he always concludes it's due to both. The preamble is pretty clear. And this circuit's case law is pretty clear in American Energy. That is error. You can't just as a physician presume based on years of exposure that there's clinical pneumoconiosis. It admixes the legal presumption with the medical causation that a physician has to do. Those are separate. A physician can't rely on the 15-year presumption in a black lung case to say that exposure had to cause the obstructive lung disease in this case. You know, the presumption has to be doing some work here. You would concede that, right? It has to in order to the benefit of the miner. And it seems almost intuitive that if someone spends 20 plus years in the coal mines and is also a smoker, that it just seemed logical that those two would be additive. I mean, I'm not a doctor, but I guess your point is that it's not always the case. And one of the strengths of my defense in this case was Dr. Warchowski's deposition. He was the Department of Labor doctor. He said, this is legal pneumoconiosis and smoking. I showed him the 2011 pulmonary function study that was close to normal. And he said, aha, that changes my opinion. The impairment here is more due to smoking. So the Benefits Review Board was wrong as well as the ALJ. And not looking at that concession by Dr. Warchowski, who explained chronology matters. But smoking is not enough to rebut the presumption, is it? It is not. But Dr. Warchowski's opinion supports the analysis from Dr. Ranavanya and Dr. Gerbo. So it changes the mix. So you've got four doctors here. Dr. Green can't be credited at all. On each side, basically. Correct. Well, no, Judge King, I'll debate that because I think Dr. Warchowski is on my side. Did you follow a reply brief that said all this? I didn't. Why would you abandon your opportunity to follow a reply brief in a case like this? Because I felt strong enough that the administrative law judge's decision was not well explained, as I explained in the opening brief, that she just failed to do what she had to do. She didn't resolve the battle with the experts and explain what Dr. Gerbo's explanation, that that ratio was so disproportionately increased that that allowed him to distinguish along with the other clinical factors. I've saved the rest of my time for rebuttal. All right. Thank you, Mr. Mattingly. Mr. Rossum. Good morning, Chief Judge Diaz, Judges King and Thacker. It's an honor to be here today. This is my first time at West Virginia Law School. It's a beautiful campus, and I'm honored to be here. May it please the court. My name is Brad Austin. I represent the coal miner in this case, Mr. Harold Bayston. Mr. Mattingly gave a lot of information there a moment ago about FEV1 values and FVC values and doctor's medical reports. But Judge Diaz, this case, as you said, is a 15-year presumption case. And it was not enough for the employer to explain that cigarette smoking caused chronic obstructive pulmonary disease in this case. The employer's burden is to rebut that there is also a contribution from coal mine dust exposure. And that's the crux of what's going on. And I think if I understood his argument correctly, he was now accepting that burden, but arguing that his experts somehow met it, but that the ALJ didn't fully consider all of the expert opinions in that regard. What's your response to that? I agree, Judge Thacker. I think that's the point that he is trying to make. But the problem, Judge, is, you know, these doctors may have made a sound medical argument as to why they personally believe that cigarette smoking was the entire cause of this man's pulmonary impairment. But the problem is, their job is to convince the fact finder. And the fact finder in this case, Judge Dahm, was not convinced by that. And it's not this court's role to go in after the fact and relay the evidence when substantial evidence... What if the ALJ didn't fully consider the evidence as petitioner is suggesting happened here? Well, I certainly don't concede that that's not what happened here. But I would make this argument if in the hypothetical situation, maybe she did not. There's multiple reasons, Judge Thacker. And a judge doesn't need a laundry list of reasons to, you know, discredit an expert. The judge is not bound to accept the opinion of any physician in any black lung case. That's the role of the fact finder. And when you look at the opinions of Drs. Jarboe and Ranavia, this judge did not provide one reason. You know, this court has had... You're saying this judge didn't provide us just a single reason why she was rejecting those experts. She provided a multitude of reasons. Exactly, Judge Thacker. And I can provide you with some of those reasons if that helps. But I think Judge Diaz pretty much during the opening argument there kind of outlined exactly what I was going to say, because the judge did provide multiple reasons in this case. And, you know, this court has recently, over the last, I guess, year and a half, been presented with these cases where there's coal mine dust-induced chronic obstructive pulmonary disease versus cigarette smoke-induced chronic obstructive pulmonary disease. And this court has published two recent decisions in the American Energy versus Good case and in the Extra Energy versus Lawson cases. The problem with both of those cases when you go to apply them to this case is that neither of those cases were 15-year presumption cases. But we do have a lot of guidance from this court on what it's looking for when it reviews an administrative law judge's findings. You know, in the Good case, the American Energy case, the administrative law judge did cite the preamble. The American Energy case stated that that was perfectly fine to do. But the problem with the administrative law judge in that case was that no other explanation was provided other than a bald declaration of employers' experts who only opine that cigarette smoke-induced COPD is present and only a bald declaration that the preamble supports the claimants' experts who provided that both coal mine dust exposure and cigarette smoke-induced COPD was the cause. So the American Energy— I'm sorry to interrupt you, but I think Mr. Mattingly's point and perhaps his frustration with the way these cases seem to work out is you've got what is intended to be a rebuttable presumption, but at least from his perspective becomes almost irrebuttable because of the nature of you've got two experts on one side, two experts on the other, both equally qualified. And the ALJ invariably sides with the expert for the minor in a rebuttable presumption case. Maybe that's not accurate. Maybe there are cases where that isn't the case. But has this, in fact, become an irrebuttable presumption? No, Judge Diaz. I think that's a fair point that Mr. Mattingly makes, but I don't think it's an accurate one because there is a rebuttable presumption. Mr. Mattingly and I do a lot of these cases, Judge Diaz. I mean, we're down in the trenches handling hundreds of these a year. We're before this court quite often arguing them on appeal. There are cases where employers do rebut the 15-year presumption. And how do they do that? What evidence do they need to bring forth to rebut the presumption that might otherwise seem irrebuttable? Well, Judge Sacker, I mean, it's hard to give you a hypothetical of exactly what evidence could be brought forth. Well, have you ever lost one of those cases where you had the rebuttable presumption? I think I have, Judge Diaz. I've lost cases like that before. But I don't want to get too far out in the weeds. We're here today on this case. No, I understand. I guess the point is, though, that ALJ still has some work to do, even if it's a rebuttable presumption, right? Absolutely, Judge Diaz. And I think that's why the recent decisions, the recent published decisions from that American Energy case and the Extra Energy case are important. Because American Energy said this is not enough for an administrative law judge to just simply quote the preamble and make bald findings. But in Extra Energy, the judge also cited the preamble, but fully explained her reasons for discrediting the experts. So when you consider those two cases in conjunction, this court has really outlined through those two recently published decisions what is needed for an ALJ when consulting the preamble. And that's at the crux of employer's argument in this case. This case is more akin to the Extra Energy case, because in this case, like you said, Judge Diaz, there were multiple reasons why Dr. Jarboe's opinion was discredited. This parallel reduction in the FEV1 and the FVC with a preserved ratio. That's an argument that employer's experts frequently make. The problem with that argument, though, is in a coal miner who has an additive contribution from both coal mine dust exposure and cigarette smoking, that parallel reduction may not continue to exist. Because if both of those impairments are causing an impairment, then that pattern may not always be accurate. That's the problem when it comes to applying patterns of impairment to specific individuals. So you just made the argument for why that opinion should have been rejected. But the question is that the ALJ make that point. Well, the ALJ was not convinced. That is the proper standard. The ALJ was not convinced by Dr. Jarboe. Why they are not convinced? Because of the fact that coal mine dust exposure, as supported in the preamble, can cause a purely obstructive, restrictive, mixed obstructive, restrictive type of impairment. And the fact that you don't have this parallel reduction, or you do have a parallel reduction, does not automatically equate to cigarette smoking induced COPD. That's the reason that the ALJ cited. That's on page 303. There were other reasons. Partial reversibility, Judge Diaz, you talked about that as well. That does not account for the residual portion of the impairment. We don't have full reversibility. It's entirely reasonable that a portion of the impairment could be due to coal mine dust. The residual portion and the reversible portion could be due to cigarette smoking. The ALJ did not credit Dr. Jarboe. She was not convinced by that. I also deposed Dr. or got a chance to ask Dr. Jarboe some deposition questions on cross examination. The judge reviewed that deposition as well and was not convinced. And then finally, even if cigarettes are harmful, more harmful, as Dr. Jarboe stated repeatedly in the deposition, it doesn't mean that coal mine dust exposure is not also harmful. The additive contribution is key here. The judge was not convinced that Dr. Jarboe had fully explained that no part of the miner's impairment was caused by cigarette smoking. Now, perhaps another ALJ would have reviewed the exact same evidence and found for employer, but that's not what we're here for. This ALJ was the fact finder. This ALJ was tasked with resolving a battle of the experts. A different ALJ could have reviewed this very same evidence, found to the contrary, and you would have no argument before this court given the presumption? If a different ALJ would have reviewed this evidence and found to the contrary and fully explained her reasons, his or her reasons for crediting the opinions of Drs. Jarboe and Ranavia, then it would be supported by substantial evidence. And this court's review would have to be a deferential one, just like I'm asking you to do in this case. But if the principle is that smoking and exposure to coal mine dust can be additive with respect to an impairment, always?   Can be is the key term. But in this case, the burden of proof is key. And that's... That's exactly 15 years on the coal company. Does it make any difference if he had 30 years underground? Well, Judge King, that's a question for a fact finder. I would assume that it wouldn't. In a lot of these cases, you have clients that have 20, 30, 40 years, not 15 years. But they have 15 years underground to get the presumption, and they have another 20 years above ground. They weren't exposed as much as if they had... He had something like 27 or 30 or 32, 34 in dusty conditions.  And I mean, the job titles for this fellow are devastating for the coal company. Well, Judge King, I think in this case, all of the experts acknowledge the fact that there's multiple risk factors. He did have a significant cigarette smoking history. He did have a significant exposure to coal mine dust. And that's really at the heart of this issue. Was it a combination of coal mine dust exposure and cigarette smoking that additively caused COPD? Was it only coal mining that caused COPD? Was it only cigarette smoking that caused COPD? And that is what the ALJs do in these cases. They are tasked with receiving evidence, considering qualifications of experts, understanding reports, and resolving that battle of the experts. And Judge King, what I was going to say before your question was the burden of proof is key in this case. If the claimant had the burden of proof in this case, we may have a different question before the court. But the burden of proof is on the company. The employer had the burden of proof. And the employer has to establish not that cigarettes caused an impairment. The employer has to establish that coal mine dust did not also cause the impairment. And that's where the employer's evidence falls short in this case. Your Honors, do you have any additional questions? We don't. Judge Diaz, thank you for the court's time. And I would just ask this court to affirm the decision in order awarding benefits and the decision in order affirmed by the Benefits Review Board. Thank you. Thank you very much. Mr. Mattingly. I can be brief. Chronology matters. That's always good. Chronology matters. Dr. Jarbo, Dr. Ranavanya looked at a series of studies over time and put that into perspective as to what was going on in this miner. Judge King, you're worried about the length of employment. The Department of Labor doesn't have a rule that if you work for 30 years, you get benefits. It'd make all of our lives easier. If they'd have that rule, they don't. So lots of miners can work lots of years and thankfully not develop pneumoconiosis. This man did not. What their jobs were. It can't. This man did not develop. I've been around a lot of these cases too. You have. And some mines are dustier than others. Some types of coal are dustier than others. And I've been in there 15 years. Congress decided that needed to go into the law. But some of these fellows are in there 30 years on the face of the other. You know, from your experience, what the results of that are. The other point that I need to make, Judge Dahm didn't do her homework, didn't show her work, which was an expression that came out of extra energy that I liked. It took me back to math class where you had to show your work. I filed a brief with her. It's substantially like the brief I filed with this court. I pointed out the page of the criteria document that says smoking was associated with a reduction of the FEV1-FVC ratio, but dust exposure was not related to this ratio. That's what Dr. Jarboe explained. That's what all the articles he cites on page 34 of the joint appendix that came out of the preamble's discussion of legal pneumoconiosis say. It's different than saying that ratio can show obstruction and minors get obstruction. But when that ratio is changed in quantity, it may tell a physician what's causing the disease. That medical testimony is unrebutted in this record. That medical testimony has never been dealt with by the agency fact finder. That's what the agency fact finder needs to do. There are multiple reasons, but you take that reason out and say, well, those other reasons might have been enough to satisfy the fact finder. We can't make that presumption. It may be that once the fact finder reconsiders that first reason, those other reasons may fall to the wayside. That's the fact finder's job. They need to do their job. So I'm asking the court to vacate the award and remand it back for the ALJ to actually correlate Dr. Jarboe's opinion explaining using the science in the preamble by this man's ratio is consistent with smoking, not coal dust exposure. So had she done that, you might have a different argument on the merits of the analysis, but that's a much harder argument for you, I think. I don't know that I would be here if she had done that. All right. I'm sure that the folks here would miss you, but do you have anything else? I don't. Thank you. Thank you. All right. I appreciate the court appreciates the argument by both counsel in this case. Very able arguments. We'll come down and greet you and then move on to our second case.
judges: Albert Diaz, Robert B. King, Stephanie D. Thacker